Dear Messers Theriot and Delahaye:
You have each requested an Attorney General's opinion regarding the Performance-Based Energy Efficiency Contract ("Contract") between the Iberville Parish School Board ("IPSB") and Siemens Building Technologies, Inc. ("Siemens"). According to Mr. Delahaye, in March of 2002, the IPSB issued a Request for Proposals ("RFP") for a district-wide energy efficiency contract pursuant R.S. 33:4547.1 through 33:4547.3. The IPSB received at least four responses to the RFP, and the IPSB Selection Committee recommended that Siemens had the best overall proposal. The Siemens' response to the RFP included work to be done at Dorseyville Elementary School.
Mr. Delahaye advised that the IPSB applied for and received funding from the energy funds sponsored by the Louisiana Department of Natural Services to achieve a lower interest rate on the bonds sold for the financing of the project. However the IPSB and Administration realized that the energy efficiency needs of the school system was far greater that the current available funding. IPSB decided to immediately implement the portions of the project that realized the quickest return on investment and replacement of the mechanical equipment that was at the end of its useful life and experiencing high failure rate. According to their opinion request, IPSB and Siemens contemplated proceeding forward with the Dorseyville Elementary School portion of the project at a future date when funding was available.
Consequently on December 9, 2003, IPSB and Siemens proceeded to enter into the Contract. Mr. Delahaye indicated that the Contract between IPSB and Siemens is a contract drafted by a committee consisting of representatives of several different energy service companies, the Louisiana Department of Natural Resources, the Louisiana Division of Administration, State Facility Planning, local professional engineers, and user agents/and users. These contract documents were drafted and approved by the *Page 2 
Division of Administration and Office of State Purchasing. The Contract included language providing for future amendments by written consent of IPSB and Siemens.
Work began on February 1, 2003 and ended on December 8, 2003. IPSB subsequently accepted completion on January 12, 2004. Thereafter, Siemens began working with IPSB Administration on Dorseyville Elementary School and presented its original response to the original RFP to IPSB on March 13, 2006. IPSB approved the Dorseyville amendment to the Contract ("Dorseyville Amendment") not to exceed $1.2 million. On April 24, 2006 the administration executed the amendment to the contract for Dorseyville Elementary School.
We have been asked two questions regarding the Contract:
 1. Whether the Contract provides the guarantees required by the applicable performance-based energy efficiency contracts law contained in La.R.S. 33:4547.1
through 33:4547.3.
 2. Whether the 2006 Dorseyville Amendment is a permitted amendment under the performance-based energy efficiency contracts law, or should it have been separately bid under the requirements of the Public Bid Law.
With regard to the first questions, La.R.S. 33:4547.1 provides in pertinent part:
 A. Any political subdivision may enter into a performance-based energy efficiency contract for services and equipment. Such a contract shall be considered a contract for services and shall be exempt from the provisions of R.S. 38:2212 but shall be subject to the provisions of this Chapter.
 B. (1) For the purposes of this Chapter, a performance-based energy efficiency contract shall be defined as a contract for energy efficiency services and equipment in which the payment obligation for each year of the contract is:
 (a) Set as a percentage of the annual energy cost savings attributable to the services or equipment under the contract; or
 (b) Guaranteed by the person under contract to be less than the annual energy cost savings attributable to the services or equipment under the contract.
 * * * * * C. "Annual energy savings" shall mean, when calculating annual energy cost savings attributable to the services or equipment installed pursuant to a performance-based energy efficiency contract as defined in R.S. *Page 3 39:1484(14), the savings in electricity, gas, water, propane, oil, diesel, steam or other like utility costs increased revenues obtained from upgrades or modifications to a water, wastewater, gas or electric utility infrastructure, systems or accounting and billing systems and shall include future capital expenditures avoided and maintenance savings. Capital replacement expenditures avoided and maintenance savings shall be itemized separately.
Further, R.S. 33:4547.3B provides:
 B. When calculating "annual energy cost savings attributable to the services or equipment" installed pursuant to a performance-based energy efficiency contract as defined in R.S. 39:1484(14), maintenance savings shall be included. "Maintenance savings" means operating expenses eliminated and future capital replacement expenditures avoided as a result of new equipment installed or services performed by the performance contractor.
Taken together, these provisions require that maintenance savings and energy savings be factored into the contract in calculating the fee due pursuant to R.S. 33:4547.1B. The result must be a gross savings in energy related expenses, from which contract fees are to be paid, and these savings must be guaranteed.
Section 5.2 of the Contract entitled "Energy and Cost Savings Guarantee" provides in part:
 Subsequent to the Performance Commencement Date and throughout the Term of this Agreement, Contractor hereby guarantees to the level of annual projected Energy and Cost Savings as detailed in Schedule C (Energy and Cost Savings Guarantee). The guarantee shall remain in effect for the full term of the performance period or until the payment obligation is satisfied.
Section 5.3 of the Contract entitled "Annual Review and Reimbursement/Reconciliation" provides in part:
 Energy-related cost savings shall be measured an/or calculated as specified in Schedule E (Baseline Energy Consumption) and Schedule F (Savings Measurement and Calculation Formulae; Methodology to Adjust Baseline) and a report provided within sixty (60) days of each anniversary of the Performance Commencement Date or within thirty (30) days of receiving final bill.
 In the event the Energy and Cost Savings achieved during such twelvemonth period is less than the Guaranteed Energy and Cost Savings during *Page 4 
the years the guarantee is in effect, ESCO shall pay to customer an amount equal to the deficiency, within sixty (60) days of the annual reconciliation.
It would appear from these Contract provisions that Siemens has guaranteed certain energy and operational (or maintenance) savings. Schedule C of the Contract indicates that the Guaranteed Savings amounts are as follows:
 Annual Measured Operational Annual Gross Savings Verified Stipulated Savings Period Energy Savings Savings Year 1 $213,627 $170,406 $384,033 Year 2 $213,627 $175,518 $389,145 Year 3 $213,627 $180,783 $394,410 Year 4 $213,627 $186,207 $399,834 Year 5 $213,627 $191,793 $405,420 Year 6 $213,627 $197,547 $411,174 Year 7 $213,627 $203,473 $417,100 Year 8 $213,627 $209,577 $423,204 Year 9 $213,627 $215,865 $429,492 Year 10 $213,627 $222,341 $435,968
This amounts to total energy savings of $2,136,270 and operational savings of $1,953,510. However, Schedule C also contains the following paragraph:
 Operational Stipulated Savings
 The Customer and the Contractor agree to stipulate that the Operational Stipulated Savings will be deemed to be achieved upon execution of this Agreement. Neither the Customer nor the Contractor will have any right to object to the use of such amounts as the Operational Stipulated Savings in the calculation of Actual Annual Savings.
While the operational savings are deemed to have been achieved, that doesn't mean those savings will actually materialize. It merely means that the parties to the Contract agree that those are the numbers that will be used to determine the amount of savings. If for some reason the actual operational savings are less that the amounts stipulated, IPSB has no recourse. Siemens is not required to measure or verify the achievement of these stipulated savings, and in the event the stipulated savings aren't met, Siemens is not obligated to pay IPSB an amount equal to the deficiency. The stipulated savings aren't actually guaranteed. This means that the savings which are guaranteed under the Contract only amount to $2,136,270, which is less than IPSB's payment obligation. *Page 5 
Therefore, the Contract does not meet the statutory definition of a performance-based energy efficiency contract.
To be clear, it is not our opinion that stipulated savings can't be included in performance-based energy efficiency contracts. However, for the stipulated operational savings to be included in the total guaranteed savings, those savings must actually be guaranteed. In order for the operational savings to be guaranteed, the Contract would have to provide for some type of measurement and/or verification of the operational savings, and require Siemens to reimburse IPSB for any deficiency.
As for the second question, the Dorseyville Amendment, like the Contract, does not meet the statutory definition of a performance-based energy efficiency contract. Because the operational savings under the Dorseyville Amendment are not guaranteed (for the reasons cited above), the total savings which are guaranteed under the Dorseyville Amendment are less than IPSB's payment obligation. However, if the stipulated savings were guaranteed under both the Contract and the Dorseyville Amendment, we see nothing which would prevent the parties from amending the Contract to include the Dorseyville Amendment.[1]
Trusting this adequately responds to your request, we remain
 Yours very truly,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY:_____________________
 KENNETH L. ROCHE, III
 Assistant Attorney General
CCF, JR/KLR, III/crt
[1] The Contract specifically allowed for amendments. The RFP issued by IPSB included Dorseyville Elementary School, and the proposal submitted by Siemens included services to be performed at Dorseyville. As long as the Dorseyville Amendment was performed under the same terms and conditions as the original RFP response, including price, then the Dorseyville Amendment would appear to be a permitted amendment to the Contract (provided, of course, the statutorily mandated savings were guaranteed in both the Contract and the Dorseyville Amendment).